IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CERENCE INC. and CERENCE OPERATING COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>MICROSOFT CORPORATION and NUANCE COMMUNICATIONS, INC.,<br><br>Defendants. | ) | C.A. No. 25-553-JCG |

**PLAINTIFFS' MOTION TO CLARIFY OR DEFER THE REFERRAL <u>TO THE REGISTER OF COPYRIGHTS UNTIL POST-DISCOVERY</u>**

*Of Counsel:*

Brian M. Daucher
Gazal Pour-Moezzi
Sheppard Mullin Richter & Hampton LLP
650 Town Center Drive, Tenth Floor
Costa Mesa, CA 92626
(714) 513-5100
bdaucher@sheppardmullin.com
gpour-moezzi@sheppardmullin.com

Edwin Komen
Sheppard Mullin Richter & Hampton LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, DC 20006-6801
(202) 747-1900
ekomen@sheppardmullin.com

ASHBY & GEDDES
Andrew C. Mayo (#5207)
Jeffrey J. Lyons (#6437)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
amayo@ashbygeddes.com
jlyons@ashbygeddes.com

*Attorneys for Plaintiffs*

Dated: August 25, 2026

## I. INTRODUCTION

This breach of contract dispute centers around Microsoft's holdover use of Cerence's copyrighted TTS Technology. In response to Microsoft's motion to dismiss, the Court deferred its ruling and referred the following question to the Copyright Office under 17 U.S.C. § 411(b)(1)(B):

> Would the Register of Copyrights have refused Registration Number TXu 2-482-827 had it known that the object code was published in 2019?

Cerence respectfully requests that the Court clarify this referral. As an initial matter, the Order incorrectly refers to 2019, the date of the underlying license rather than 2024, the date of completion of the source code for which registration was sought. *See* D.I. 21 at Ex. 2.

Minor substantive revisions would also be appropriate:

The question as framed may presuppose two disputed facts: (1) that Cerence's TTS software was "published" under the Copyright Act; and (2) that Cerence chose to file an inaccurate application. Publication under 17 U.S.C. § 101 is a fact intensive inquiry that, in this case, has not been litigated, much less resolved. Intent is also a fact specific matter. If the work is later determined (or conceded) to be published, then such a point can be corrected merely by a supplemental registration to correct that error to the otherwise valid registration.

## II. ARGUMENT

### A. The Referred Question May Presume Publication – A Disputed Fact

The question the Court has referred to the Register of Copyrights arguably embeds a conclusion that remains vigorously disputed: that Cerence's TTS object code was "published" within the meaning of the Copyright Act.

The question as framed, along with portions of the rest of the Order, could be read to imply that the Court has already determined that the source code at issue was in fact published at the time of filing. Although this question remains in potential dispute, the Order also potentially implies

and asks the Copyright Office to assume, that Cerence acted with "knowledge that it was inaccurate" (one statutory predicate for invalidating a registration under 17 U.S.C. § 411(b)(1)). Cerence has certainly not admitted this, and contends the opposite.

Publication under the Copyright Act is not established merely by distribution. Whether computer software qualifies as "published" within the meaning of 17 U.S.C. § 101 is a mixed question of fact and law. "[P]roof of distribution or an offer to distribute, alone, is insufficient to prove publication," and "central to the determination of publication is the method, extent, and purpose of distribution." *Kernel Recs. Oy v. Mosley*, 694 F.3d 1294, 1302 (11th Cir. 2012). The underlying factual circumstances surrounding distribution, including who received copies, how many, for what purpose, and subject to what restrictions are the primary focus of the inquiry. *See Academy of Motion Picture Arts and Sciences v. Creative House*, 944 F.2d 1446, 1452 (9th Cir. 1991) (describing the two-part test courts use to determine whether a work is published under § 101: (1) the purpose of distributing the work was limited; and (2) that the recipients had no right of sale or further distribution, *i.e.* that their right of distribution was expressly or impliedly limited).

Courts have specifically held that software distributed to a limited class of persons under strict access and use restrictions creates at least a triable issue of fact on this question. *See*, *e.g.*, *Bell Atl. Bus. Sys. Servs., Inc. v. Hitachi Data Sys. Corp.*, No. C 93-20079 JW, 1995 WL 836331, at *6 (N.D. Cal. Dec. 14, 1995) (denying summary judgment, finding evidence that the software at-issue was made available only to a limited class of persons, that end users did not own the copies of the software that accompanied their purchase of the hardware, and that the manufacturer placed strict restrictions on the access and use of the software by distributors of the hardware); *Computrac, Inc. v. L. Firm Consulting Servs.*, No. CIV.A. 3:95-CV-0754D, 1997 WL 42525, at *3 (N.D. Tex. Jan. 29, 1997) (noting that "limited publication" is, in effect, no publication at all within the

meaning of the Copyright Act, but finding general publication on its facts; allowing the mis-statement to be "corrected by means of a supplementary registration").

Cerence disagrees that there has been any "general distribution" or "disclosure to the public" of the work whether in source code (certainly not) or object code (probably not under the test) form. Relevant factors include how the object code is used by Cerence's customers, to whom or to how many customers Cerence has supplied, which versions were supplied to these customers, and under what restrictions or other terms and conditions the technology was delivered.

The Copyright Office is an office of public record without enforcement or investigative authority, and its primary responsibility is to examine applications to determine whether they satisfy the requirements of the copyright law. *Olem Shoe Corp. v. Washington Shoe Co.*, Case No. 1:09-cv-23494-CIV-HUCK/O'SULLIVAN, Dkt. 209 at 4 (S.D. Fla. Oct. 14, 2010) (attached as Exhibit A). A fundamental examining principle is that the Office does not usually make findings of fact when examining applications. Compendium of U.S. Copyright Office Practices ("Compendium") at § 206.

On the question of publication specifically, the Office does not ask whether a work is "published or unpublished," instead, there is simply a place in the application where the applicant can list the publication date, if any. Even where the Office would otherwise refuse to register a claim because of an error or omission, its established practice is to correspond with the applicant and, where possible, annotate or amend the application, which may then allow registration to proceed. *Olem Shoe*, Dkt. 209 at 5. As a general rule, a registration specialist may also ignore immaterial inaccuracies in the application that appear to be inadvertent and do not affect the registrability of the claim. Compendium at § 212.2. In short, the registration process is a perfunctory administrative procedure, and errors (particularly good-faith ones, including mistake

of law or fact) do not result in forfeiture of copyright protection. As can be seen, the question whether the work is published is not cut and dry.

There has been no development of these factual issues. The Court adopted Defendants' characterization of Cerence's pleading, treating a contested litigation inference and attorney argument potentially (as framed) as an established fact. Paragraph 32 of the amended complaint describes the general nature of software distribution in the industry, not that Cerence specifically made a "general distribution to the public" within the meaning of 17 U.S.C. § 101.

Sending a question to the Register that could be read as presupposing publication as a settled matter asks the Register to opine based upon a factual premise that has not been established and that Cerence disputes. The answer to this question, as posed, could embed a contested factual premise into a quasi-official advisory opinion that could prejudice Cerence's ability to litigate the underlying issue on a fair record.

**B. The Referred Question May Presume That Cerence Acted With Knowledge**

By asking the Copyright Office to presume that Cerence "knew" at the time of filing that the work was "published" within the meaning of the Copyright Act, the Copyright Office may assume that Cerence knew and knowingly filed an inaccurate application. This is not correct. Cerence acted in good faith based upon: (a) the fact that the source code is certainly highly confidential and never distributed; and (b) even the object code is distributed by license in very limited manner, subject to restrictions.

There is no evidence that, and no discovery into whether, Cerence "knowingly" misrepresented the work as unpublished to the Copyright Office (it did not). The Supreme Court in *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178 (2022), recently held that § 411(b) does not distinguish between a mistake of law and a mistake of fact, and that lack of either factual or legal knowledge can excuse an inaccuracy in a copyright registration under

§ 411(b)(1)(A)'s safe harbor. *Id.* at 187–88. The Court grounded this holding in the statutory text, explaining that a certificate of registration is valid even though it contains inaccurate information, as long as the copyright holder lacked "knowledge that it was inaccurate." *Id.* at 182. Critically, the Court acknowledged that registration applications call for information that requires both legal and factual knowledge including, for example, when and where the work was "published," and that inaccurate information in a registration is "equally (or more) likely to arise from a mistake of law as a mistake of fact." *Id.* at 185.

Cerence, like all applicants, is entitled to a presumption that it acted in good faith, absent evidence to the contrary. In this case, there is literally no strategic advantage or other reason or motive for Cerence to knowingly file an inaccurate application. If an error is found here, then, as set forth below, absent some proof of intent and materiality, Cerence should simply be permitted to file a supplementary application. Copyright Circular 8, Supplementary Registration (2021), expressly provides that a supplementary registration may be appropriate "[t]o correct the . . . date of publication." *See* D.I. 26 at 17 n.5 (citing Copyright Circular 8, Supplementary Registration (2021)). Under the Copyright Act, a work of authorship is protected by copyright from the moment it is created, provided that the work is original and fixed in a tangible medium of expression. Compendium at § 202.

## III. CONCLUSION

Congress enacted § 411(b) to make it *easier*, not more difficult, for *nonlawyers to obtain valid copyright registrations*, in part by "eliminating loopholes that might prevent enforcement of otherwise validly registered copyrights." *Unicolors, Inc.*, 595 U.S. at 187. The teaching in *Unicolors* is that the safe harbor is intended to minimize the effects of the practice of defendants arguing that "a mistake in the registration documents, such as checking the wrong box on the

registration form, renders a registration invalid." *Id.* For these reasons, the referral should be clarified to make it clear that neither publication nor applicant's knowledge is presumed.

Cerence therefore respectfully requests that the Court correct factual issues and clarify the question to make it clear that: (1) 2024 was the date of completion of the work (not 2019); (2) it remains disputed whether under the facts here the work should be considered as published or unpublished; the Court has made no determination on that question; and (3) it remains disputed whether Cerence filed the application "with knowledge that it was inaccurate."

*Of Counsel:*

Brian M. Daucher
Gazal Pour-Moezzi
Sheppard Mullin Richter & Hampton LLP
650 Town Center Drive, Tenth Floor
Costa Mesa, CA 92626
(714) 513-5100
bdaucher@sheppardmullin.com
gpour-moezzi@sheppardmullin.com

Edwin Komen
Sheppard Mullin Richter & Hampton LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, DC 20006-6801
(202) 747-1900
ekomen@sheppardmullin.com

Dated: August 25, 2026

ASHBY & GEDDES

*/s/ Jeffrey J. Lyons*

Andrew C. Mayo (#5207)
Jeffrey J. Lyons (#6437)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
amayo@ashbygeddes.com
jlyons@ashbygeddes.com

*Attorneys for Plaintiffs*